IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CÁNDIDA CABRERA, et al, <br><br> Plaintiffs, <br><br> v. <br><br> ROMANO'S MACARONI GRILL <br> PUERTO RICO, INC., et al., <br><br> Defendants. | CIVIL NO.: 22-1449 (MEL) |

**OPINION AND ORDER**

**I.    INTRODUCTION**

This is a diversity jurisdiction torts action brought by Plaintiffs Cándida Cabrera Escobar ("Mrs. Cabrera") and her husband Osvaldo Cabrera ("Plaintiffs") seeking to recover damages for the alleged negligence of codefendants International Restaurant Services, Inc., owner and operator of a franchise which runs "Romano's Macaroni Grill," and its insurer, American International Insurance Company of Puerto Rico ("Defendants"). On September 16, 2022, Plaintiffs filed suit against Defendants alleging that the accident and damages suffered by Mrs. Cabrera at Romano's Macaroni Grill on September 19, 2021, were the result of gross negligence by Defendants. ECF No. 1 at 3. Plaintiffs amended their complaint on January 26, 2023. ECF No. 31. Defendants answered on March 7, 2023. ECF No. 44.

Pending before the Court is Defendants' motion for summary judgment and motion *in limine* to preclude the testimony of Plaintiffs' expert, engineer Otto González Blanco ("Eng. González"). ECF Nos. 72, 86.

Case 3:22-cv-01449-MEL    Document 110    Filed 11/27/24    Page 2 of 40

In their motion for summary judgment, Defendants argue that Plaintiffs "fail to establish an adequate standard of care and causation" and that the record "is devoid of evidence to support Plaintiffs' allegation that her fall was caused by Defendants' negligence." ECF No. 72 at 2. Plaintiffs opposed Defendants' motion for summary judgment on August 29, 2024. ECF No. 87. Defendants accompanied their motion with a statement of proposed undisputed material facts to which Plaintiffs filed a response with additional proposed material facts. ECF Nos. 71, 87-1. Defendants replied to Plaintiffs' opposition and statement of additional facts. ECF Nos. 91, 91-1. Plaintiffs tendered a surreply. ECF No. 101-1.

In their motion *in limine* to exclude Plaintiffs' expert, Defendants argue that Eng. González's testimony should be excluded because he did not base his opinion or testimony in appropriate scientific data, facts, or analysis and further that he did not review or consider all the evidence available in the case. ECF No. 86 at 1-2. Plaintiffs opposed Defendants' motion *in limine* on September 6, 2024. ECF No. 89. Defendant replied on September 23, 2024. ECF No. 99. Plaintiffs filed a surreply on October 7, 2024. ECF No. 102.

For the reasons detailed below, Defendants' motion *in limine* to exclude Plaintiffs' expert is GRANTED and Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## II.    LEGAL STANDARDS

### A.  Summary Judgment

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011) (quoting *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp.*, 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, the party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The party need not, however, "rely only on *uncontradicted* evidence . . . So long as the [party]'s evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan*, 904 F.2d at 115. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood." *Greenburg v. P. R.*

3

*Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

### B. Admission of Expert Testimony

Admission of expert testimony is governed by Federal Rules of Evidence 702 and 703, which codifies the principles articulated in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). When presented with a challenge to the admissibility of expert testimony, a court "must determine whether the expert witness is qualified and has the specialized knowledge that will 'assist the trier of fact to understand evidence or to determine a fact in issue.'" *Bogosian v. Mercedes-Benz of N. Am.*, 104 F.3d 472, 476 (1st Cir. 1996) *(*quoting Fed. R. Evid. 702).

Rule 703, in relevant part, provides that an expert may base an opinion on facts or data in the case that the expert has been "made aware of or personally observed." Fed. R. Evid. 703. Rule 702, on the other hand, provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if a proponent demonstrates by a preponderance that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Rule 702 has been interpreted liberally in favor of the admission of expert testimony." *Saldaña Cabán v. Centro Médico del Turabo, Inc.*, 2023 WL 5122171, at *3 (D.P.R. August 10, 2023) (quoting *Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006)).

A district court examining the reliability aspect of an expert's opinion thus must determine: 1) whether the expert is qualified, 2) whether the opinion is supported by reliable information or

knowledge, and 3) whether the opinion is supported by logical scientific reasoning or methodology. *Daubert*, 509 U.S. at 589-90; *see also Mitchell v. United States*, 141 F.3d 8, 14 (1st Cir. 1998). As the First Circuit has observed, "*Daubert* does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." *United States v. Mooney,* 315 F.3d 54, 63 (1st Cir.2002) (citation and internal quotation marks omitted). "It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Id.* (citation and internal quotation marks omitted). "The Rule 702 inquiry is a 'flexible one', ..., and there is no particular procedure that the trial court is required to follow in executing its gatekeeping function under *Daubert*." *United States v. Diaz*, 300 F.3d 66, 73 (1st Cir. 2002).

## III.    MATERIAL FACTS NOT IN CONTROVERSY[1]

On September 19, 2021, Mrs. Cabrera, her husband Osvaldo Cabrera ("Mr. Cabrera"), and some of their family members went out to dinner at Romano's Macaroni Grill in Caguas, Puerto Rico. ECF No. 71 at 1, ¶ 2; ECF No. 87-1 at 1, ¶ 1; ECF No. 87-1 at 6, ¶ 2. Defendant International Restaurant Services Inc. ("IRSI") is the owner and operator of a franchise which runs Romano's Macaroni Grill. ECF No. 91-1 at 10, ¶ 1; ECF No. 87-1 at 6, ¶ 1. IRSI owned, operated and controlled said restaurant during and since the incident on September 19th, 2021. *Id.*

Mrs. Cabrera and her relatives arrived at Romano's Macaroni Grill around 8:00-8:30 PM and were taken to be seated at a booth by a waiter. ECF No. 71 at 2, ¶ 4, ¶6; ECF No. 87-1 at 6, ¶ 3; ECF No. 87-1 at 1, ¶ 1. The booth was elevated on a platform and the table had a tripod base. ECF No. 71 at 2, ¶ 7; ECF No. 87-1 at 7-8, ¶¶ 6, 12. Cabrera saw that the booth was elevated on a platform, and

---

[1] The following facts are deemed admitted despite Plaintiffs' denial because the denial does not contradict the proposed fact: 7, 23, 24, 37, 43, 55, and 56. ECF No, 71; ECF No. 87-1. The following facts are deemed admitted despite Plaintiffs' denial because the denial is not supported by a record citation at all: 44. *Id.*

she stepped onto the platform and entered the booth without any problem. ECF No. 71 at 2, ¶ 7.[2] Mrs. Cabrera confirmed that the other persons present, that is, her husband, brother-in-law, and sister-in-law, also stepped up to the platform where the booth was located without any problem. ECF No. 71 at 2, ¶ 8; ECF No. 87-1 at 2, ¶ 3. There was no visual marker on the floor to alert her as to the change in elevation. ECF No. 87-1 at 7-8, ¶ 9, ¶ 17; ECF No. 91-1 at 12, ¶ 9; ECF No. 87-2.

Mrs. Cabrera was sitting on the left side of the booth, with her husband to her left, while her brother-in-law and sister-in-law sat on the right side.[3] ECF No. 71 at 2, ¶ 5; ECF No. 87-1 at 1, ¶ 1. At the end of the meal, after the others exited the booth, Mrs. Cabrera slid along the half-moon shaped booth seat on her buttocks in order to get out from the left side of the booth, using her right hand as support on the table with her left hand on the seat. ECF No. 71 at 2, ¶¶ 7-8, at 3, ¶¶ 10-13; ECF No. 87-1 at 2, ¶ 3. Mrs. Cabrera's right foot got tangled in part of the table's base, which she describes as a "spike" that intruded her foot space. ECF No. 71 at 2, ¶ 9, at 3, ¶ 10, ¶14, ¶15; ECF No. 87-1 at 2, ¶ 3; ECF No. 87-1 at 8-10, ¶¶ 13-14, ¶ 24; ECF No. 91-1 at 17, ¶ 24; ECF No. 87-2. Mrs. Cabrera tried to support herself with her left foot, which had already cleared the spike at the table base, but she lost her balance and fell where the platform and the floor are. ECF No. 71 at 2, ¶ 9, at 3, ¶ 10, ¶14, ¶16; ECF No. 87-1 at 2, ¶ 3. Mrs. Cabrera's right foot was still caught on the spike while the rest of her body, including her hip, was on the floor. ECF No. 71 at 3, ¶ 17. ECF No. 87-1 at 2, ¶ 3. According to Mrs. Cabrera, a combination of the table base, the lack of foot space in the booth, the elevation, and the lack of warning as to the elevation all, in combination, contributed to her fall. ECF

---

[2] Plaintiffs contest this fact as drafted, noting that the waiter did not mention the step or change of level of the dining booth as Plaintiffs were seated. ECF 87-1 at 2, ¶2. However, Plaintiffs' qualification does not contradict this proposed fact. Moreover, Plaintiffs' citation does not support their qualification. Mrs. Cabrera testified that she saw the platform that the booth was affixed to, and she stepped up to the booth without any problem. ECF Nos. 71-1, 87-4 at 48:22-25-49:1-2.

[3] Based on Mrs. Cabrera's description of the incident, it appears that she was sitting on the left side of the booth from the perspective of someone in the booth.

No. 87-1 at 10, ¶ 24; ECF No. 91-1 at 17, ¶ 24; ECF No. 87-2. There had been no accidents similar to those suffered by Mrs. Cabrera while exiting the booth at Romano's Macaroni Grill Restaurant. ECF No. 71 at 4-5, ¶¶ 23-24; ECF No. 87-1 at 2, ¶ 4.

## IV.    ANALYSIS

### A.  Applicable Substantive and Procedural Law

Defendants move for summary judgment on Plaintiffs' claim of negligence. ECF No. 72 at 1. In this case, Plaintiffs allege negligence based on the "negligent placement of objects," which, in combination with other factors created a hazardous condition in violation of Defendants' duty to the Plaintiffs. ECF No. 87 at 8-9; ECF No. 101-1 at 2, 10. Defendants argue that Plaintiffs' evidence fails to establish that Mrs. Cabrera's fall was caused by Defendants' negligence, specifically, that Plaintiffs fail to establish an adequate standard of care and causation, which they note is required in negligent design cases. ECF No. 72 at 14-15. Plaintiffs, on the other hand, argue their case is not a negligent design case requiring citation to a standard of care, and that they have provided enough evidence for a jury to find that Defendants breached their duty as a commercial establishment by configuring objects in its restaurant dining booth area in a negligent way, resulting in Mrs. Cabrera's injuries. ECF No. 87 at 2, 4; ECF No. 101-1 at 1-2.

A federal court sitting in diversity, as in this case, must apply state substantive law and federal procedural law. *See Suero-Algarín v. CMT Hosp. HIMA San Pablo Caguas*, 957 F.3d 30, 39 (1st Cir. 2020) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)). Thus, Puerto Rico jurisprudence dictates the substantive law of this case. *See Baum-Holland v. Hilton EL Conquistador Management, LLC*, 964 F.3d 77, 87 (1st Cir. 2020) (applying Puerto Rico substantive law in its diversity case).

Puerto Rico's general tort statute as codified in Article 1536 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. tit. 31 § 10801 ("Article 1536")[4], provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." "Fault" under Article 1536 could be "committed knowingly and willfully" or could simply be an act "willful or not, of a person which produces a wrong or damage." *Reyes v. Heirs of Sánchez Soto*, 98 D.P.R. 305, 310 (1970). Hence, "the wrongdoer who is guilty of fault or negligence, whatever the consequences may be, is bound to repair the wrong...." *Id*. at 311–12. In light of this broad standard, the First Circuit has recognized that tort liability under Puerto Rico law consists of three elements: "(1) evidence of a physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." *González-Cabán v. JR Seafood Inc.*, 48 F. 4th 10, 14 (1st Cir. 2022) (quoting *Vázquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007)). Under Puerto Rico law, negligence is "defined as 'the failure to exercise due diligence to avoid foreseeable risks.'" *Blomquist v. Horned Dorset Primavera, Inc.*, 925 F.3d 541, 546-47 (1st Cir. 2019) (citing *Woods-Leber v. Hyatt Hotels of P.R., Inc.*, 124 F.3d 47, 50 (1st Cir. 1997)); *Irvine v. Murad Skin Research Labs., Inc.*, 194 F.3d 313, 321 (1st Cir. 1999) (citing *Malavé-Félix v. Volvo Car Corp.*, 946 F.2d 967, 971 (1st Cir. 1991)).

A plaintiff bringing a negligence-based suit must establish "(1) a duty requiring the defendant to conform to a certain standard of conduct, (2) a breach of that duty, (3) proof of damage, and (4) a

---

[4] Article 1802 of the Puerto Rico Civil Code of 1930, Puerto Rico's previous tort statute, was replaced by Article 1536 when the new Puerto Rico Civil Code was enacted in November 2020. PR Laws Ann. tit. 31 § 10801. However, Articles 1802 and 1536 have provisions that "are extremely similar and thus can be used interchangeably." *Orellano-Laureano v. Instituto Médico del Norte, Inc.*, 2023 WL 4532418, at *6 n.5 (D.P.R. 2023). Courts in this district accordingly apply caselaw analyzing Article 1802 to claims arising under Article 1536. *See e.g.*, *Dumanian v. FirstBank P.R.*, 2024 WL 197429, at *3 n.4 (D.P.R. 2024).

causal connection between the damage and the tortious conduct." *Woods-Leber*, 124 F.3d at 50 (citations omitted); *see also Calderón-Ortega v. United States*, 753 F.3d 254, 254 (1st Cir. 2014) (quoting *Cotto v. Consol. Mut. Ins. Co.*, 16 P.R. Offic. Trans. 786, 794 (P.R. 1985)) (noting that the plaintiff bears the burden of placing "the court in a position to make a clear and specific determination on negligence"). In cases where the defendant was negligent through an omission, "the defendant must have been under a duty to act ...." *Rodríguez-Quiñones v. Jiménez & Ruiz*, S.E., 402 F.3d 251, 254 (1st Cir. 2005). Moreover, "for liability to attach, the negligent act must be the 'adequate cause' of the harm." *Tokyo Marine and Fire Ins. Co., Ltd. V. Pérez & Cia., de Puerto Rico, Inc.*, 142 F.3d 1, 6 n.5 (1st Cir. 1998). In the context of causation, a defendant is only liable for that which a reasonable and prudent person could have anticipated or foreseen. *Marshall v. Pérez-Arzuaga*, 828 F.2d 845, 847 (1st Cir. 1987) ("The 'causal nexus' principle limits a party's liability for hazards flowing from its negligence to those hazards that could be 'anticipated by a prudent person.'") (internal quotations omitted) (citation omitted). Thus, "liability will only arise if the damages complained of were reasonably foreseeable to the defendant." *Irvine*, 194 at 322 (citing *De Jesús-Adorno v. Browning Ferris Industries*, 160 F.3d 839, 842 (1st Cir. 1998). "As is true in most jurisdictions, foreseeability is a central issue in these cases, as it is an element of both breach of duty and proximate cause." *Vázquez-Filippetti*, 504 F.3d at 49.

"Puerto Rico law recognizes two distinct types of breach in premises liability cases: negligent maintenance and negligent design." *Cedeño Nieves v. Aerostar Airport Holdings LLC,* 251 F.Supp.3d 360, 367 (D.P.R. 2017) (citing *Vázquez-Filippetti*, 504 F.3d at 49-51). In particular, claims based on allegedly dangerous conditions (or negligent maintenance) on commercial property require a showing that the defendant knew or should have foreseen the risks created by the condition. *Id*. at 369. The

court in *Vázquez-Filippetti* explains that cases premised on the existence of a dangerous condition

often arise from:

> A "slip-and-fall," caused by a wet or slippery floor, and involve a claim that the business owner was negligent in permitting the condition to remain because it is foreseeable that a wet floor is likely to cause injury. Similar claims include stairway railings in disrepair, burned-out exterior or security lights in a dangerous area, and unsturdy or unstable floors. In any of these circumstances, the property itself, if it were in pristine condition, would be safe, but some act or omission by the owner has created dangers or risks to the property's visitors.

*Vázquez-Filippetti*, 504 F.3d at 50. In contrast, cases arising from allegedly dangerous property may

alternatively take the form of a defective or negligent design case. *Id*. The court makes clear that in

cases of defective or negligent design:

> The essential elements of a negligent design case are the same as other tort claims: injury, breach of duty, and proximate cause. However, in a design case, the plaintiff also bear[s] the burden of establishing the applicable standard of care. Whereas a typical tort claim involves the generic reasonably prudent person standard of care (or duty) and requires the plaintiff to present no evidence about the defendant's duty, a plaintiff in a design case must present evidence as to the specific duty or standard of care applicable to the design of the product or property at issue.

*Id*. (internal citations and quotations omitted).

## B. A Mostly *De Facto* Negligent Design Case

Defendants argue that plaintiffs have failed to establish an adequate standard of care. ECF No.

72 at 2, 19. Hence, implicitly, Defendants contend that this case should be viewed through the lens of

a negligent design case rather than a negligent maintenance case. Plaintiffs, on the other hand, respond

that they are not required to articulate a specific standard of care because this is not a negligent design

case, but instead, "[t]his is a case of simple negligence, based on the placement of physical objects

and elements at the dinning booth by defendant [that] [w]hen put together, these objects created a

dangerous condition that caused Mrs. Cabrera's accident." ECF No. 87 at 2. Plaintiffs depart from a

traditional negligent design case in that they claim the original architect's design was safe and it was

the *deviation* from that design plan that was negligent, noting that their expert Eng. González "…actually praised, and is not questioning, the architectural design by the restaurant's own architect…" and that "…this is a case for which a safe design was available…" ECF No. 89 at 4.

With the exception of a failure to warn allegation, this is not a dangerous condition or negligent maintenance case.[5] It is undisputed that Mrs. Cabrera's accident was not caused by Defendants' "failure to remedy conditions that the property owner neither intended nor desired." *Vázquez-Filippetti*, 504 F.3d at 51. For example, there are no allegations of any spills or unintended items (e.g., banana peel, wrapping, utensil, clothing, jewelry, toy, etc.) on the floor, nor are there any allegations of broken objects in disrepair. Yet, at first glance it may appear as if Plaintiffs are not pursuing a negligent design theory either because they and their retained expert witness readily acknowledge that the original design prepared for the restaurant was safe in its conception. However, for all practical purposes, Plaintiffs are indeed alleging a negligent design case because they implicitly or explicitly argue that Romano's Macaroni Grill knowingly and intentionally failed to follow the original design, and changed the design – if not on a drawing or a plan, by virtue of the way that things were actually built or placed – to one that was unsafe. This new *de facto* design (not necessarily drawn by or reduced to paper by any architect or engineer), Plaintiffs argue, was inherently dangerous in more ways than one: different table, different platform height, and removal of an angler on a platform's edge without a visual marker in substitution. In other words, Defendants chose to disregard a safe original plan and instead implemented a different and unsafe design.

Plaintiffs keep harping on the fact that the original design was not followed by Romano's Macaroni Grill, but this contention – even if undisputed – is not in isolation enough to open the doors

---

[5] As discussed *infra* p. 34, outside of Plaintiffs' *de facto* negligent design claims, *i.e.*, negligent placement of the objects, Plaintiffs have a failure to warn claim.

11

to a jury trial. The mere fact that the original design and the *de facto* design are different is not necessarily evidence of negligence. The *de facto* design could be less safe, just as safe, or safer than the original design. Therefore, the question is not whether the original design and the *de facto* design are different; the question is whether the *de facto* design is in compliance with the applicable standard of care.

Plaintiffs cite other cases to support their conclusion that this type of case, *i.e.*, one based on "negligent placement or configuration of objects," does not even require the presentation of liability expert evidence or testimony to erroneously support their argument that no standard or regulation needs to be cited by Eng. González in this case. ECF No. 89 at 4 (citing *Gutiérrez v. Bahr*, 78 D.P.R. 473 (1955); *Santaella v. Licari*, 83 D.P.R. 887 (1961)). *Bahr* and *Santaella* do not involve the admissibility or exclusion of expert witnesses within the context of a negligent design case under Puerto Rico law, or stand for the proposition that no expert testimony or standard is needed in the case at hand. *Bahr* involved a claim of negligent maintenance of a fan in a public place of business. 78 D.P.R. at 474. In *Santaella*, the issue was who was responsible, the tenant or the building, for construction of a door that opened inward, not outward, in violation of building codes. 83 D.P.R. at 891-892.

In further support of this assertion, Plaintiffs cite to cases outside of the premises liability context, including medical malpractice cases, where expert testimony did not articulate the applicable standard of care or reference any outside source to support their opinion. *See e.g., Saldaña-Cabán v. Centro Médico del Turbo Inc.*, 2023 WL 5122171 (D. P. R. August 10, 2023); *Martínez et al. v. United States*, 33 F. 4th 20 (1st Cir. 2022). While the medical malpractice context is not applicable here in a negligence case, it is important to mention that the experts in these cases did point to general national standards of care in either their report or in their deposition testimony. *See Martínez*, 33 F.

4th 20 at 28-29; *Saldaña-Cabán*, 2023 WL 5122171 at *5. The Court in *Saldaña-Cabán* concluded that an "integrated reading of [the] expert report in conjunction with [the expert's] deposition testimony allows for the conclusion that the *Daubert* threshold is met." *Id*. at *7.

On the other hand, Plaintiffs cite to *Márquez v. Casa de España de Puerto Rico*, 59 F.Supp.3d 409, 415 (2014), a case holding that expert testimony was not necessary to establish the objective standard of care; however, the court there concluded that the case was not a negligent design case, but a failure to warn case. *Casa de España de Puerto Rico*, like the case at hand, involved injuries sustained from falling on an unmarked step, although not in identical circumstances. *Id*. at 412.[6] However, unlike the case at hand, it was a disputed fact whether a warning strip was present at the time of the accident. *Id*. Moreover, the Court in *Casa de España de Puerto Rico* determined that Plaintiff's case was not a negligent design case. *Id*. at 415 ("Plaintiff's contention does not relate to the negligent placement or design of the step. Rather, she challenges Casa de España's failure to adequately warn its guests about the potential danger of the step.") The court in *Casa de España de Puerto Rico* specifically notes that the record in *Vázquez-Filippetti* clearly showed that all of the Plaintiff's arguments in the complaint, pretrial documents, and at trial related to the negligent design of the ATM machine, whereas the Plaintiff in *Casa de España de Puerto Rico* did not focus on or mention negligent design, but *only* focused on the failure to warn. *Id*. Plaintiffs argue in the case at hand that it was a *combination* of conditions, not one in particular, that caused Mrs. Cabrera's fall. To support their argument that the fall resulted from a combination of conditions, Plaintiffs put forth a *de facto* negligent design claim (even though they do not challenge the adequacy of the original design) as it relates to the table, the step riser, and the lack of angle marking. Plaintiffs might not view

---

[6] In *Case de España de Puerto Rico* case, for example, the plaintiff alleged that she tripped on an unmarked step. Here, on the other hand, plaintiff claims that she tripped with a leg of the table and that the unmarked step contributed to her fall by making her lose her balance.

their contentions as a design challenge, but there is no evidence on the record that any deviations from the original design at Romano's Macaroni Grill restaurant were the result of poor upkeep of the facilities. To the contrary, if anything, the evidence on the record is that the intended design changed in some respects. In order for these *de facto* negligent design claims to survive summary judgment, they must comport with the law, which requires that Plaintiffs establish a standard of care.

### C.  Standard of Care

#### 1.  Tables with Post Square Base

Plaintiffs argue that Defendants deviated from the original design plan when they did not install in the booth a table with a post square base, as allegedly called for in the original plan.[7] ECF No. 87 at 7-8. Both Plaintiffs and Defendants dedicate a significant portion of their arguments to the issue of whether a table with a post square base was part of the original architect's design plan. ECF No. 72 at 18-19; ECF No. 87 at 3, 6-8, 16-17; ECF No. 91 at 2-4. Similarly, a significant number disputed immaterial facts relate to this issue, each side supporting their respective understandings with expert reports and deposition testimony as to what was and was not included in the design plan. ECF No. 87-1, at 8-10, ¶¶ 45-49, 53; ECF No. 87-1 at 4-5, ¶¶ 16, 17, 19; ECF No. 87-1 at 7-9, ¶¶ 5, 10-11, 18-19; ECF No. 91-1 at 10-15, ¶¶ 5, 10-11, 18-19. Plaintiffs retained the services of Eng. González as their expert witness. ECF No. 71 at 5, ¶ 25; ECF No. 87-1 at 2, ¶ 5. Eng. González issued an expert report dated December 22, 2023. ECF No. 71 at 5, ¶ 26; ECF No. 87-1 at 2, ¶ 5. Eng. González contends that Defendants should have used a table with a square base, as opposed to the three-pronged base installed, arguing that the architect's original design plans contained the former. ECF No. 71 at 5-6, ¶¶ 28-30; ECF No. 87-1 at 2-3, ¶¶ 6-8; ECF No. 71-4 at 5. On the other hand, Defendants retained the services of Architect María Otheguy ("Arch. Otheguy") as their expert

---

[7] No allegation has been made that the table at issue was broken, unstable or deteriorated.

witness, who was the designer of the Romano's Macaroni Grill Restaurant where Mrs. Cabrera fell. ECF No. 71 at 8, ¶ 41-42; ECF No. 87-1 at 3, ¶ 13; ECF No. 87-1 at 7, ¶ 4.  Arch. Otheguy's report was dated February 8, 2024. ECF No. 71 at 8, ¶ 42; ECF No. 87-1 at 3, ¶ 13. Arch. Otheguy argues that the interior furniture was not part of the design plan, as depicted by the dotted lines in the plan, which indicate only where furniture will be placed, not what kind. ECF No. 71 at 8-9, ¶¶ 45-48; ECF No. 87-1 at 4, ¶ 16.

For the limited purpose of ruling on the pending motion for summary judgment, the Court will take as a given Plaintiffs' view, that is, that tables with post square bases were part of the original design for the booths at the restaurant. Romano's Macaroni Grill opted to use in their booths tables with a three-pronged base, that is, a different furniture design from the one contemplated in the original plan. Plaintiffs do not cite, nor does Eng. González cite, to any code, regulation or standard that prohibits the use of three-pronged base tables at restaurants or that requires – or even recommends – the use of post square bases in booths. Therefore, as a matter of law, Defendants cannot, without reference to any standard of care, be held liable for the use of a three-pronged base table in a booth. In fact, nobody even suggests that three-pronged base tables are never used in the restaurant industry. Under these circumstances, Plaintiffs cannot argue that simply because Mrs. Cabrera tripped on one of the three prongs of the table base that the table was somehow unreasonably dangerous.

## 2. Measurements of the Step Riser

Plaintiffs argue that Romano's Macaroni Grill deviated from the original design plan when they constructed the booth atop an elevated surface rising 3¾ inches. ECF No. 87 at 6-7. Plaintiffs note that the original design plan mandated an elevated step measuring 6¼ inches. *Id*. at 6. Eng. González's report notes that the step riser measured 3 ¾ inches and that a minimum of four inches was required. ECF No. 87-5 at 1, 2, 5. This deviation from design argument is another *de facto*

implementation of a negligent design argument. Plaintiffs argue that the step riser should have been constructed at 6¼ inches as mandated by the original design plan, and Eng. González opines that the deviation was negligent because it should have been at least four inches. *Id*. However, neither Eng. González nor Plaintiffs' motion opposing the entry of summary judgment cite to a standard of care specifying that step risers in booths or platforms must or even should be a minimum of four inches tall in restaurants. Therefore, this theory of liability suffers the same fate as the controversy of the tables used.

### 3. Angle Marker

Next, Plaintiffs argue that Defendants deviated from the original design plan when they did not place a steel angle marker on the edge of the step riser as a visual warning. ECF No. 87 at 6. Eng. González notes that the booth design detail was not constructed as per the original design plan because it did not contain the angle marker. ECF No. 87-5 at 4-5. Unlike Plaintiffs' other arguments, which are devoid of any reference to any standards, Eng. González's expert report reads as follows in its pertinent portion: "The black steel angel on corner edge was not installed. Since the construction is in concrete and ceramic floor, a reflective tape (yellow and black) could have been provided to alert clients of riser to booth platform." ECF No. 71-4 at 4. The conclusions to the report add: "Applicaton of ANSI Z535 Standard & Z359 Fall Protection Standard by using floor marking tape should have been considered." *Id.* at 5.[8] Hence, at face value it would seem that Eng. González is setting a standard of care making reference to two sections of the American National Standards Institute, Inc. ECF Nos. 86-4; 86-5. The deposition of Eng. González, however, revealed otherwise.

At the Eng. González's deposition he was asked:

---

[8] American National Standard Institute Inc. ("ANSI"). At another portion of his report Eng. González was more specific: "ANSI Z535.2 – Visibility and legibility of safety signage. Application of Floor Marking Tape in substitution of the steel angle, restraining booth platform; in and oust safety hazards." ECF No. 71-4.

Q: Okay, but you would agree with me, if ANSI itself says that it is not normative, and that what it states or that strips such as these are not mandatory, it is not required in a restaurant facility such as the Macaroni & Grill where Ms. Cabrera fell, correct?

A: I would not be able to agree with you.

ECF No. 86-1 at 84:20-25.

Q: Let me ask you this, engineer González. So it's your testimony that ANSI requirements are mandatory even though ANSI itself says that they are not. Is that your testimony?

…

A: I stated that I cannot answer that question  because *I did not come to testify about ANSI regulations or any of that.* The regulation is part of what is written on the tape that's placed on there, that comes from the manufacturer. And it is placed when there is a change on the level, on the step for public safety.

Q: Okay. Would you agree with me that there is no building code applicable to the design of a restaurant that requires the use of ANSI-Z535.2 within a restaurant, correct?

…

A: [ ] That is not correct, *because I did not come here to talk about codes or regulations or violations to codes  when there's a restaurant.  I came to say that the construction itself and the  drawings are not the same.* There was an angular there which called for elevation, and the identification was not there because they placed some sort of ceramic or  something, that did not state that there was a difference in the elevation.  *So I can't answer the question, because I did not  come here to talk about deviations from regulations or failure to follow the regulations or both, in restaurants.*

…

A: I understand your question. I can only say that the specification is part of what the manufacturer states of the product. *I didn't come here to talk about ANSI.* I mean, this particular tape includes a specific code, ANSI-Z535.2. I came to talk about the product. Now, it is in this code from ANSI, and counsel, with all due respect, I believe that I answered your question as best as I could. I have to quote that particular code, because it is what the product says in the floor marking, the tape reads ANSI-Z535.2. *I didn't come here to talk about the extension of the regulation or the code itself….*

17

ECF No. 86-1 at 87:19-22; 88:5-14; 89:2-13; 92:13-25; 93:1-3 (emphasis added).

> Q: […] Would you agree with me that the use of marking tape on a platform is not mandatorily required?
>
> …
>
> A: Okay. In this case there was no angular to identify that there was a change in elevation, so it would be mandatory to place that tape, so that people would actually see that there was a change in the elevation. So my answer would be that the use of the marking tape would be mandatory under these particular conditions.
>
> Q: Okay. But you don't have a specific source or code section to support that opinion that you just gave, correct?
>
> ….
>
> A: That I don't have any source of what?
>
> Q: A source or code. A source. A source or code, was what I said.
>
> …
>
> A: *But my report doesn't talk about codes. Yes, but I'm not here … I'm not here to talk about codes.*

ECF No. 86-1 at 93:5-8; 94:3-12, 17-18, 21-23 (emphasis added).

The main problem with Eng. González's deposition testimony is not whether the ANSI codes are mandatory or a voluntary "guide to aid the manufacturer, the consumer, and the general public." ECF No. 86 at 7 (citing ECF No. 86-4). The Fifth Circuit has observed that the safety standards and codes such as those compiled by ANSI are "representative of 'a consensus of opinion carrying the approval of a significant segment of an industry' and [are] offerable as exemplifying safety practices prevailing in the industry." *Frazier v. Continental Oil Co.,* 568 F.2d 378, 382 (5th Cir.1978). While the law is by no means settled, ANSI codes have an "inherent trustworthiness" and often their introduction is necessary to "impart relevant information not contained elsewhere." *Id*; *see also Brown v. Clark Equipment Co.,* 618 P.2d 267, 276 (1980) ("[S]afety data, codes or standards ...

promulgated by voluntary industry organizations ... are admissible as evidence on the issue of negligence ... [and are] admissible as an alternative to or utilized to buttress expert testimony.") Clearly then, evidence of safety standards "'may be relevant and admissible even though the standards have not been imposed by statute or promulgated by a regulatory body and therefore do not have the force of law.'" *Ross v. Black & Decker, Inc.,* 977 F.2d 1178, 1184 (7th Cir.1992) (*quoting Ruffiner v. Material Service Corp.,* 116 Ill.2d 53, 106 Ill.Dec. 781, 784, 506 N.E.2d 581, 584 (1987), *cert. denied,* 507 U.S. 917, 113 S.Ct. 1274, 122 L.Ed.2d 669 (1993)). *See also Ruhs v. Pacific Power & Light,* 671 F.2d 1268, 1273 (10th Cir.1982).

Even if ANSI standards are voluntary and their violation does not establish negligence per se, they may still be relevant to the facts of this case. Courts have allowed experts to rely on ANSI standards to support their opinions. *See e.g.*, *Donahoe v. Maggianos,* 440 F.Supp.3d 92, 97 (2020) (D.Mass. 2020) (allowing an expert to testify regarding whether a revolving door at a restaurant was defective, relying on ANSI standards); *Babin v. Wendelta, Inc.,* 368 So.3d 363, 373-74 (Miss. Ct. App. 2023) (allowing an expert to testify, relying on ANSI standards, that Defendant created a dangerous condition with its choice of mats to place in a restaurant's vestibules). Moreover, courts have applied ANSI standards to customers injured at restaurants. *See e.g.*, *Donahoe*, 440 F.Supp.3d at 97 (patron was injured when she left restaurant through a revolving door, alleging negligence); *Babin*, 368 So.3d at 373-74 (patron was injured when she slipped on a mat and fell at a restaurant, alleging negligence). This is consistent with ANSI's stated goal to "benefit [ ] businesses across every industry and *consumers* around the world." ECF No. 71-5 (Defendants' Exhibit 4) (emphasis added).

However, even if ANSI codes may be considered despite not being mandatory, the standard must still be applicable. Read in the light most favorable to Plaintiffs, as the non-moving party, Eng. González's report clearly cites to a standard, namely ANSI codes, to support his position. However,

neither party provided the Court with a copy of the text of the exact ANSI codes or quoted the specific language of the code, and Eng. González's report on its own does not provide the Court with enough information to verify whether this standard is applicable in the context of Plaintiffs' case. Courts may conduct an "integrated readings of [the] expert report in conjunction with [the expert's] deposition testimony [to come to] the conclusion that the *Daubert [v. Merrel Dow Pharms.*, 509 U.S. 579 (1993)] threshold is met." *Saldaña-Cabán*, 2023 WL 5122171 at *5. Thus, due to the absence of more specific information regarding the ANSI codes in Eng. González's report, a closer look must be made of Eng. González's deposition testimony to fill the vacuum.

With regard to the first cited ANSI code, Eng. González contends that the restaurant should have used floor marking tape to warn customers as to the change in elevation. ECF 87-5 at 5. However, when asked more about these ANSI codes, Eng. González repeatedly emphasizes that he is not willing to talk about ANSI regulations or standards. *See e.g.*, ECF No. 86-1 at 88:5-7 ("I did not come to testify about ANSI regulations or any of that."); 89:2-4 ("I did not come here to talk about codes or regulations or violations to codes when there's a restaurant."); 89:12-13 ("I did not come here to talk about deviations from regulations or failure to follow the regulations or both, in restaurants."); 92:15 ("I didn't come here to talk about ANSI."). Thus, the first concern with    Eng. González's position is that he cites ANSI codes that he believes are mandatory at a restaurant, but fails to tell the Court what exactly the language of those codes state and more troubling, refuses to talk about the ANSI codes in the context of a booth's platform that rises less than four inches from the floor. Therefore, the Court cannot even tell whether the cited ANSI codes at a minimum suggest or recommend the placement of a visual  marker when there are platforms that rise less than four inches from the floor.

The second problem with Eng. González's deposition testimony is that he focuses solely on the deviation from design argument, but as previously discussed, if the *de facto* design implemented is not up to standards, Eng. González has an obligation to explain the standards. It is not enough to simply say that the *de facto* design is different from the original design.

> Q: Where does the tape come from?
>
> A: They sell the tape at Home Depot; they sell it at...
>
> Q: Does the drawing establish that?
>
> A: No, not the tape. The drawing establishes an angular, but since the angular was not placed, then there is a need to place an element that can establish that a step is to be identified there. They can place the aluminum angular; they can place the tape. They can place... that tape manufacturer I am pointing to, which can be any other tape, has that specification. And what I... I did not go into the merits of the specification, because *I do not discuss the specifications or the regulations in the report.*

*Id*. at 96:16-25; 97:1-7 (emphasis added). And at another point, Eng. González adds that he is only there to testify as to deviation from design. *Id*. at 89:5-6 ("I came to say that the construction itself and the drawings are not the same").

The third problem with Eng. González's testimony is that he admits that he is not citing ANSI's section 535.2 to establish what measures should have been taken at Romano's Macaroni Grill regarding a visual marker on the booth's platform, but simply to identify a particular tape that is in compliance with said provision. Moreover, he does not even appear to be fully familiarized with what exactly said ANSI section states.

> Q. Just to be clear, the reference that you have in your report to X535... ANSI-X535.2 is in relation to a tape, and it's not in relation to the ANSI code section as such. Is that your testimony?
>
> A. Correct. That specification is referring to the tape.

Q. Okay. *So it does not refer to the ANSI section as such, which establishes what type of measures, including tapes, can be used in a given situation. Is that also correct?*

A. *I don't know. I don't know.*

A. I'd have to review the literature in order to provide you with an answer, as to the specific definition of that specification.

Q. Okay. And just to be clear, *you in your report are not stating that the platform in relation to the floor, constitutes a violation of ANSI-Z535.2, correct?*

A. *No, that is correct. You are correct.*

ECF No. 86-1 at 98:8-25; 99:1-8 (emphasis added).

Eng. González was given the opportunity time and time again to explain his report and the pertinence of the ANSI standards to his conclusions, yet he did not do so. Instead, he doubled down on his assertion that he was not there to talk about standards. Yet, talking about standards is exactly what Eng. González needed to do, as expert testimony is necessary in this implementation of a *de facto* negligent design case because a layperson does not have knowledge of ANSI codes or whether or not an angle marker or visual marker is warranted in this specific situation to prevent an unreasonably dangerous condition for the restaurants' diners. *Vázquez-Filippetti*, 504 F.3d at 54.

With respect to the scope of ANSI Z359, a blog cited by the parties which discusses the provision without citing its content, describes it as follows:

> The Fall Protection Code standards, address program management, system design, training, qualification and testing, and equipment for the processes used *to protect personnel working at height in a managed fall protection program*. The Code addresses several types of systems, including fall restraint systems, work positioning systems, rope access systems, fall arrest systems, and rescue systems.

ECF No. 86-5 (emphasis added). It is not readily apparent how this provision about "personnel working at height" is relevant to the fall of a patron like Mrs. Cabrera's at Romanos' Macaroni Grill.

22

Eng. González's deposition testimony also does not clear up the scope or application of ANSI Z359 to the case pending before the Court. ECF No. 86-1 at 105:23-25; 106:3-20.

Addressing both ANSI sections cited in the report, the following exchanged occurred at Eng. González's deposition:

> Q: As we sit here today, you are not prepared or cannot testify as to the scope and applicability of ANSI Section Z535.2 or ANSI Section Z359, which is cited in your report, correct?
>
> A: I can testify about it once I review it since I don't recall what I said about it. I can testify as to that and I am saying that the floor marking are, have, that the manufacturers floor markings have that specific code. Now, I don't think that it's incorrect that I cannot cite them. Now, if we need to cite them, and then provide further explanations, I can do this, but since I didn't come here to talk about regulations and code, then I could review it, get prepared, and if you'd like to further depose me, then I'd be happy to."

ECF No. 86-1 at 109-110. Surely, a professional such as Eng. González who claims to having worked as an engineer since 1977, owned an consulting engineering firm, received engineering practice awards, collaborated on "hundreds of designs for projects" and being "an expert in hundreds of cases to determine the cause as part of … [his] accident reconstruction training, both for plaintiffs and defendants and insurance companies" (ECF No. 87-3 at 4, ¶15) must understand that if he cites any particular ANSI codes in an expert report for the proposition that a business has been negligent and he is summoned to be deposed about his opinions in that expert report, he needs to come to that deposition ready to answer questions about any codes, regulations or standards cited in his expert report. He cannot show up unprepared to a deposition to get a preview of the questions that he is going to face to then come up with answers on a second round. Expert witnesses are not required to a have a perfect memory, but in this case, the ANSI codes are not a secondary or collateral detail in Eng. González's expert report. The ANSI codes at issue are specifically cited to in the conclusions of his expert report. ECF No. 71-4 at 5.

### 4. OSHA's Fall Protection Standards

Eng. González concludes that Occupational Safety and Health Administration ("OSHA") Fall Protection Standards apply. ECF No. 89-5 at 5. Specifically, Eng. González concludes that "[a]pplication of OSHA's Fall Protection Standards also for customers and employees working in the booth preparations is also another consideration for safety." *Id*. However, Eng. González's deposition testimony acknowledges that the cited OSHA Fall Protection Standards apply to workers in the workplace, and Mrs. Cabrera was not working at Romano's Macaroni Grill.[9] In addition, Plaintiffs do not cite any precedent for the applicability of OSHA standards outside of the worker context. Despite Mrs. Cabrera not being a worker or employee at Romano's Macaroni Grill, Eng. González simply relies on the fact that because restaurants have workers, OSHA regulations apply. However, when asked at the deposition the specifics of OSHA's Fall Protection Standards, Eng. González stated "I don't recall right now what those specific standards are." ECF No. 86-1 at 113.

### D. The Admissibility of Eng. González's Expert Testimony

Defendants seek to exclude Eng. González's testimony pursuant to Federal Rules of Evidence 702 and 703, as well as pursuant to *Daubert* and its progeny, on grounds that it is speculative, unreliable, and insufficiently grounded in appropriate scientific data, facts, or analyses. ECF. No. 86. Defendants discuss Eng. González's failure to review all the evidence of record, including architect Arch. Otheguy report and statement under penalty of perjury, as well as Mrs. Cabrera's deposition testimony. *Id*. at 12-14. Specifically, Defendants argue that Eng. González's opinions are based on "speculation and conjecture" because he did not review the aforementioned information. *Id*. at 13.

---

[9] OSHA's Fall Protection Standards apply to workers in the construction industry and they cover the following: 1) Walking-Working Surfaces [29 CFR 1910 Subpart D]; 2) Powered Platforms, Manlifts, and Vehicle- Mounted Work Platforms [CFR 1910 Subpart F]; 3) Personal Protective Equipment [CFR 1910 Subpart I]; and 4) Special Industries [CFR 1910 Subpart H]. ECF 63-7.

24

Defendants' claim that Eng. González has "no knowledge of how the accident occurred according to Plaintiff Cabrera" because Eng. González did not read her deposition testimony, though relevant for vigorous cross examination, is not in and of itself sufficient to strike him as an expert. *Id*. Knowledge of the Mrs. Cabrera's account of how she fell can come from more than one source, although Eng. González's should have clearly spelled out the source in his report or deposition testimony. However, at Eng. González's deposition, the following exchanges transpired:

> Q: And does this report contain all your opinions in relation to this case?
>
> A: Correct

ECF No. 86-1 at 44:25-45:1-3.

…

> Q: Have you reviewed at any time the deposition of Ms. Cabrera?
>
> A: No.

ECF No. 86-1 at 49:11-13.

…

> Q: Now, in addition to the documents that you reviewed, the measurements and the photographs that you took, did you or have you spoken at any time with Ms. Cabrera?
>
> A: No.
>
> A: I don't recall having spoken to her. To be honest with you, I don't recall whether I spoke to her.

ECF No. 86-1 at 51:1-10.

Of course, knowledge of the circumstances of the fall is relevant to Eng. González's ability to offer his expert opinion. Eng. González's unawareness or, at a minimum, lack of specificity in his report as to which foot Mrs. Cabrera got tangled with the table and where exactly her other foot landed leaves much to be desired for purposes of an accident reconstructionist. It is not until Eng.

25

González submits a statement under penalty of perjury in support of an opposition to a motion for summary judgment that the details of the fall seem to perfectly align with the details of        Mrs. Cabrera's deposition testimony. *Compare* Ms. Cabrera's deposition testimony ECF No. 71-7 at 55, lines 1-8 ("As I was going around, because it's shaped in the shape of a half-moon, there was like a peak, like a stick coming out or however you want to call it, and my right foot got tangled in that stick that was coming out. And I was trying to support my left foot, that's how I lost my balance and fell.") with Eng. González's statement under penalty of perjury in support of opposition to motion for summary judgment ECF No. 87-3 at 3, ¶10 ("Plaintiff's accident happened when Mrs. Cabrera's right foot tripped and got tangled with one of the spikes of the table base as she was exiting the booth to her left. When she tried to support her body with her left foot outside of the booth, her left foot was unsupported by the aisle due to the change of level of the step, and she fell.")[10]

Nevertheless, in writing his report, it is clear that Eng. González was made aware of certain facts, data, and allegations in the case, including the "architectural drawings, [Plaintiffs'] complaint document, accident scene sitting table and [D]efendant[s'] pictures." ECF 71-4 at 1. The complaint (which Eng. González says he was acquainted with), for example, alleges in its pertinent part that:

---

[10] *See also* Mrs. Cabrera's statement under penalty of perjury attached as an exhibit to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment:

> Later that night, as we were leaving, I tried to get out of the booth by sliding to my left. I was near the end of the couch, and I placed my right hand on the table. At that moment, my right foot got tangled with the bottom part of the base of the table, which extended to the area of my feet. *This affected my balance as I was already in the process of getting out of the booth. As I put my other foot out of the booth, I did not have support, because the booth was mounted [o]n a step.* I then fell hard on the floor, hitting with my left side and hip, and suffered my injuries. I think that the metal spike made me lose my balance, and then step made things worse because it felt like I stepped into the air due to the change in level. There were no warnings posted in the area about anything regarding that booth. I had no visual orientation about the step as I was leaving the booth because it had no markings. These are all the things that made me fall.

ECF No. 87-2 (emphasis added).

At a certain point, co-plaintiff Cándida Cabrera was in the process of exiting the seating booth, and one of her feet slightly tripped on one of the spikes under the table. Given the elevation of the surface (step), Mrs. Cabrera fell off the booth as she was trying to step outside…. The adequate cause of the accident and damages suffered by [Mrs. Cabrera] was the gross negligence of defendant International Restaurant Services Inc., who mounted some of their dinning [sic] booths on top of an unduly elevated step, while the spikes at its metal base interrupted the exit movement of a customers' feet, under narrow conditions given the booth's conformation, and all under recessed lighting conditions. The aforesaid configuration definitely created a dangerous trap for unsuspecting dinning [sic] customers like Mrs. Cabrera, was very much preventable, and constitutes gross negligence. There were no warnings for the clients about these dangers.

ECF No. 31 at 3, ¶3, 4. Further, Eng. González visited the restaurant facilities personally on September 22, 2023, to take measurements and observe the scene of the accident. *Id*. Rule 702 does not demand that experts rely on all data that could be deemed relevant. It does not even require the expert to seek out the best possible source of relevant information. "Sufficien[cy]" is the benchmark for an expert's data under the Rule. Fed. R. Evid. 702(b); *see* 29 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6268 (2d ed. 2017) (explaining that "the word 'sufficient' in Rule 702 signifies that the expert may properly base her opinion on something less than all the pertinent facts or data" and, as a result, "sufficiency is not a matter of whether the judge believes in the facts or data on which the expert relies"). Therefore, Eng. González's expert opinion – despite some serious shortcomings – will not be excluded on foundational grounds.

Defendants also argue that Eng. González has "no experience or training in the design of restaurant interiors," and while he was involved in structural and site design of restaurants in the past, he has not "taken part in any such designs during the last fifteen (15) years." ECF No. 72 at 12. Eng. González's educational background and professional experience qualify him to render an opinion in this case as an accident reconstructionist because Eng. González's résumé shows he received training in accident reconstruction for fall and traffic accidents and, according to          Eng. González, he has served as an expert in hundreds of fall cases. ECF No. 89-2; ECF No. 86 at 12.

In addition, Defendants also argue that Eng. González's report does not address every claim in Plaintiffs' complaint; specifically, his report does not state "any opinion relative to the platform and/or the height of the same; the recessed lighting and/or lack of adequate warnings" and whether "these factored into [Mrs.] Cabrera's fall." *Id*. at 12-13. Defendants find this at odds with Plaintiffs' description of her fall in her complaint. ECF No. 31. However, Eng. González does discuss both the platform height and the lack of warnings of the height in his report. ECF No. 71-4. at 1,2,4,5. It is true that Eng. González does not address Plaintiffs' claim as to dimmed or recessed lighting; however, Eng. González need not have discussed every claim in Plaintiffs' complaint in order to testify as to how the accident occurred.

The crux of Defendants' *Daubert* challenge rests on whether Eng. González's opinion is supported by reliable information or knowledge and logical scientific reasoning or methodology. ECF No. 86 at 11-16. As previously discussed, Eng. González points to no codes, regulations or restaurant industry standards to support his report conclusions that tripod style tables are unacceptable for restaurant booths, that post square table bases should be used instead, and that platforms where booths rest must rise at least 4 inches from the floor. He also invokes OSHA safety standards which are applicable to workers, not guests such as Mrs. Cabrera. In addition, Eng. González's report makes a reference to whether changes or departures of the design were informed to the Caguas Municipal Government's permits office, but it amounts only to speculation as to what municipal regulation sets any particular safety parameters relevant to this case. Furthermore, Eng. González cannot testify that the lighting on the night of the incident was dim or that the lighting contributed to the fall, as he does not mention lighting in his report or in his statement under penalty of perjury.

The only hint left of scientific reliability to a standard is Eng. González's references in his report to two ANSI codes to justify the placement of a tape on a platform's edge, the existence of

which Mrs. Cabrera admitted in her deposition she was aware as she stepped into the booth without any difficulties. However, as previously discussed, despite given multiple opportunities to explain whether, why or how those codes made the absence of a visual marking on the booth platform's edge an unreasonably dangerous condition for guests at Romano's Macaroni Grill, at his deposition Eng. González insisted that he did not come to testify about deviations from codes and regulations, but instead about deviations from the original design.

In support of Plaintiffs' opposition to Defendants' motion for summary judgment, however, Eng. González sings a different tune from the one heard at the deposition and now suddenly feels compelled to make statements in his statement under penalty of perjury about deviations from codes and regulations:

> My reference to the ANSI code and OSHA standards are meant to show safety compliances used in commercial establishments. ANSI's recommendations are used nationally beyond the parameters of employment safety. *The standard that was violated by the restaurant.* Puerto Rico OSHA standards apply to commercial facilities since employees provide the in-house service and maintenance.

ECF No. 87-3 at 3, ¶14.

Defendants argue that Eng. González's statement under penalty of perjury and Mrs. Cabrera's statement under penalty of perjury, both attached as exhibits to Plaintiffs' opposition to Defendants' motion for summary judgment, are sham affidavits. ECF No. 91.

The "sham affidavit" doctrine is not meant to exclude the elaboration, explanation, or clarification of prior testimony; it is specifically aimed at the exclusion of clearly contradictory testimony. *See e.g. Malavé Torres v. Cusido*, 919 F. 2d 198, 203 (D. P. R. 2013); *Gillen v. Fallon Ambulance Serv.*, 283 F.3d 11, 26 (1st Cir. 2002); *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009). Explanatory affidavits are frequently filed in the motion for summary judgment process and "[m]ost affidavits are self-serving, as is most testimony, [but] this does not permit a district judge

29

to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial." *See Kaba v. Steep*, 458 F. 3d 678, 681 (7th Cir. 2006); *Malavé-Torres*, 919 F.2d at 203. Even arguably self-serving affidavits are to be considered when resolving motions for summary judgment. *See Cadle Co. v. Hayes*, 116 F.3d 957, 961 n.5 (1st Cir. 1997) ("A party's own affidavit, containing relevant information of which [they] ha[ve] first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment."). However, when a party "has given clear answers to unambiguous questions, [they] cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380, 387 (1st Cir. 2016) (citing *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994)). District courts are not required to articulate each contradiction between the party's prior testimony and the later filed affidavit in order to reject the statement. *See Orta-Castro v. Merck, Sharp, & Dohme, Química P.R., Inc.*, 447 F.3d 105, 110 (1st Cir. 2006) (affirming district court's decision to disregard later filed affidavit that contradicted prior deposition testimony). Moreover, the court may strike out such testimony when the party offering it provides no satisfactory explanation for the changed testimony. *See Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 20-21 (1st Cir. 2000) (citing *Colantuoni*, 44 F.3d at 4-5). A party may nonetheless elaborate, explain or clarify "prior testimony elicited by opposing counsel on deposition." *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009). All in all, a party may not contradict previously given deposition testimony with a later filed affidavit, unless an adequate explanation is given for the 180-degree turn. *See Colantuoni*, 44 F.3d at 4-5; *Orta-Castro*, 447 F.3d at 110.

Here, there is a clear contradiction between Eng. González's deposition testimony and the statement under penalty of perjury submitted to defeat Defendants' motion for summary judgment.

In the statement under penalty of perjury, Eng. González opines that the ANSI code was a standard "that was violated by the restaurant." ECF No. 87-3 at 4, ¶ 14. However, as previously explained in detail, Eng. González's prior deposition testimony strayed far away from ANSI regulations or standards. *See e.g.*, ECF No. 86-1 at 88:5-7 ("I did not come to testify about ANSI regulations or any of that."); 89:2-4 ("I did not come here to talk about codes or regulations or violations to codes when there's a restaurant."); 89:12-13 ("I did not come here to talk about deviations from regulations or failure to follow the regulations or both, in restaurants."); 92:15 ("I didn't come here to talk about ANSI."). This is in stark contrast to his statement under penalty of perjury, where he makes it clear that Defendants violated the ANSI standard.

Second, Defendants object to several of Eng. González's statements under penalty of perjury as they contain new information not included in his expert report or deposition. ECF No. 87-3 at ¶¶ 10-12.  In his expert report, Eng. González does not specify or discuss the specifics of Mrs. Cabrera's fall, *i.e.*, he says generally that "her feet" slightly tripped on one of the spikes under the table and given the elevation of the booth as she was trying to step out, she fell, assertions that mirror the allegations of the complaint. ECF No. 71-4 at 5. However, in his statement under penalty of perjury, Eng. González specifies exactly how Mrs. Cabrera fell, noting that her "right foot tripped and got tangled" and that she tried to support her body with her "left foot outside of the booth" and because "her left foot was unsupported by the aisle due to the change in level of the step," she fell. ECF No. 87-3 at ¶¶ 10-11. Thus, it is clear that Eng. González's statements under penalty of perjury in support of the opposition to defendant's motion for summary judgment contain certain information that if not partially inconsistent with his report, at least significantly elaborate on details. Defendants' request to strike Eng. González statement under penalty of perjury, however, fails because they do not

specifically cite to a prior contradictory statement under oath except on one point. At his deposition, Eng. González was asked:

> Q: And does this report contain all your opinions in relation to this case?
>
> A: Correct.

ECF No. 86-1 at 44:25-45:1-3. Therefore, if while under oath at his deposition Eng. González adopted his report as containing the entirety of his opinions, and his report he says that "her feet" (in plural) slightly tripped on one of the spikes under the table, he cannot now say that Mrs. Cabrera's right foot (in singular) got tangled with one of the spikes.

In sum, there are two portions of the statement under penalty of perjury submitted by Eng. González in support of the opposition to the motion for summary judgment that clearly contradict prior testimony under oath and thus, will be stricken pursuant to the sham affidavit doctrine: (1) the entirety of paragraph 14 of said statement under penalty of perjury making an assertion, *inter alia*, that the ANSI standard was violated by Romano's Macaroni and Grill and (2) the reference in paragraph 10 of said statement under penalty of perjury to "Mrs. Cabrera's right foot".

This brings us then back to Defendants' *Daubert* challenge. Eng. González does not cite any standards as to the type of table to be used or the required height of the platform where the booth rests. His attempt to springboard OSHA regulations outside of the work environment and impose them on restaurant guests is not admissible, particularly as there is not even evidence on the record that waiters at Romano's Macaroni Grill actually go in and out of restaurant booths to do their jobs (as opposed to simply standing in front of the booth to take an order). He was unable to answer with specificity questions at his deposition about the ANSI codes cited in his report and the OSHA standards. His assertions regarding said standards in his statement under penalty of perjury issued

post deposition have been stricken. Eng. González cannot testify about recessed lighting because he is completely silent about that topic in his expert report. Moreover, he – who has been retained as an accident reconstructionist – will not be able to even say what Mrs. Cabrera has said under oath, namely that it was her right foot, not both of her feet, which allegedly got tangled with a leg of the table. Under these circumstances, it cannot be said that Eng. González's conclusions were made "in a scientifically sound and methodologically reliable fashion." *Martínez-Suárez v. Mansiones de Garden Hills Apartments*, 556 F.Supp.3d 1, 20 (D.P.R. 2021) (citing *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998); *Milward v. Acuity Specialty Products Group, Inc.*, 639 F.3d 11, 15 (1st Cir. 2011)). Accordingly, Defendants' *Daubert* challenge to disqualify Eng. González as an expert witness in this case has merit.

### E. Failure to Warn

What Plaintiffs have left, after disqualification of their expert witness and the inability to make a *de facto* negligent design claim as to the table, the step riser, and the angle marking, is a failure to warn claim.

"It is the failure to correct, in the exercise of due care, a known hazardous condition or one of which the [property owner], in the exercise of due care, should be aware, or *the failure to effectively warn invitees of its presence,* that constitutes fault or negligence" in a premises liability claim. *Casa de España de Puerto Rico*, 59 F.Supp.3d at 415 (citing *Mas v. United States,* 784 F.Supp. 945, 948 (D.P.R.1992) (emphasis added). Plaintiffs mention their failure to warn claim in their complaint, stating that "[t]here were no warnings for the clients about these dangers."[11] ECF No. ECF No. 31. In her deposition testimony, Mrs. Cabrera confirms that she was not given a warning from the waiter. She was not asked, nor did she mention, a visual warning in her deposition testimony. ECF No. 71-1

---

[11] "These dangers" is in reference to the step, among other conditions.

at 48:18-21 Mrs. Cabrera does, however, mention the failure to warn in her statement under penalty of perjury attached as an exhibit to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment.[12] ECF No. 87-2 ("I was never warned about the existence of dangers under the dinning [sic] table, a change of elevation in the booth, or that there was any danger of falling due to the combination of any parts of that booth, or anything else. There were no warnings at all in the area… There were no warnings posted in the area about anything regarding that booth. I had no visual orientation about the step as I was leaving the booth because it had no markings."). In order to succeed on a failure to warn claim, Plaintiffs must show duty, breach of duty, and causation. *Casa de España de Puerto Rico*, 59 F.Supp.3d at 413 (citing *Mas v. United States,* 784 F.Supp. 945, 948 (D.P.R.1992) (citing *Nieves–Romero v. United States,* 715 F.3d 375, 378–79 (1st Cir.2013)).

### 1. Duty

The first element of a negligence action is commonly known as a duty of care. *Baum-Holland*, 964 F.3d at 88. It may arise "(1) by a statute, regulation ordinance, bylaw, or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation." *De-Jesús Adorno v. Browning Ferris Indus. of P.R., Inc.*, 160 F.3d 839, 842 (1st Cir. 1998). In a failure to warn case there is no need to "present evidence as to the specific duty or standard of care applicable to the design of the product or

---

[12] Defendants claim that Mrs. Cabrera's above statement is a "sham affidavit." ECF No. 91 at 8-12. Defendants argue that Mrs. Cabrera's affidavit impermissibly expands the scope of Plaintiffs' claims to include failure to construct according to plan and failure to provide a visual reference. ECF No. 91 at 8-12. As to Defendants' first contention regarding failure to construct according to plan, there is no mention of a plan or failure to construct according to plan in Mrs. Cabrera's statement. ECF No. 87-2. With regard to Defendants' second contention regarding failure to provide a visual reference, the lack of any warning as to the change in elevation was included in Mrs. Cabrera's complaint. ECF No. 31 at 3. Moreover, Mrs. Cabrera was never asked about the lack of warning in her deposition, but instead was asked an open-ended question to describe the fall in a narrative fashion. ECF No. 71-1 at 51:18-22 ("I'm going to ask Mrs. Cabrera to testify in as much detail as possible on how the accident occurred. I would like for it to be a narrative."). Mrs. Cabrera's statement under penalty of perjury is not a "sham affidavit," as nothing in her statements regarding the issue at hand contradicts Mrs. Cabrera's deposition testimony or the allegations in Plaintiffs' complaint. ECF No. 71-1 at 48:18-21; 53:1-9; 54:1-8; 58:21-24; 60:8-11.

property at issue," which usually warrants "expert testimony regarding the standard of design." *Smith v. Condado Duo La Concha SPV, LLC,* 2017 WL 9121575, at *3 (D.P.R. September 14, 2017). Instead, as in most negligence cases, a defendant's duty "is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." *Chapman v. E.S.J. Towers, Inc.*, 803 F.Supp. 571, 574 (D.P.R. 1992) (citing *Ortiz v. Levitt & Sons of P.R., Inc.*, 1 P.R. Offic. Trans. 407, 101 D.P.R. 290 (1973)).

> [T]he negligent act is defined as a breach of the duty imposed or recognized by law, to act, as would a prudent and reasonable man, ... in order not to expose to foreseeable and unreasonable risks of damages, as a result of the actor's behavior, those persons who ... a prudent and reasonable man would have foreseen ... would be exposed to the unreasonable risk created by the actor. In other words, a person breaches the duty of reasonable care when his actions create reasonably foreseeable risks.

*Vázquez–Filippetti,* 504 F.3d at 49 (internal quotations omitted).

Plaintiffs were owed a duty as invitees, *i.e.*, customers, of Romano's Macaroni Grill. It is a "universal juridical principle" that when a person or entity opens a commercial establishment "for the purpose of transacting business therein for his or its own benefit, is bound to maintain it in such a safe condition that one who is induced to enter the premises will not suffer any damage." *See e.g.*, *Gutierrez v. Bahr*, 78 D.P.R. 473, 474 (1955); *Outter v. Marriot P.R. Mgmt. Corp.*, 2020 WL 1429205, at *4 (D.P.R. March 18, 2020). In other words, the duty is that of ordinary care or that of a reasonably prudent person. *Calderon-Ortega*, 753 F.3d at 252 (finding that business owners undeniably owe "a duty of reasonable care to business invitees.")

### 2. Foreseeability

Because foreseeability is a central issue in premises liability claims, as it is an element of both breach of duty and proximate cause, the resolution of this issue possesses the capacity to sway the outcome of this case. *Vázquez–Filippetti,* 504 F.3d at 49. For liability to attach in this case, an unsafe

condition must exist inside of the business, and the condition must have been either known or reasonably foreseeable, making the injury avoidable had the defendant acted with due care. *See e.g. Rigual-Quintana v. United Parcel Service, Co.*, 195 F.Supp.2d 358, 361 (D.P.R. 2002); *Woods–Leber,* 124 F.3d at 52. "The rule of foreseeability does not mean that the precise risk or the exact result which was encountered should have been foreseen. The essential factor is to be under a duty to foresee, *in a general way,* consequences of a particular type." *Gines v. Aqueduct & Sewer Auth.,* 86 P.R.R. 490, 496 (1962). The duty of care requires "anticipating reasonably probable injuries to probable victims," and therefore "does not extend to all imaginable effects resulting from defendant's conduct." *Wojciechowicz v. United States*, 576 F. Supp. 2d 241, 272 (D.P.R. 2008), *aff'd*, 582 F.3d 57 (1st Cir. 2009) (citations omitted). It is undisputed that Mrs. Cabrera's fall occurred on the Defendants' premises at Romano's Macaroni Grill. ECF No. 71 at 2, ¶ 9, at 3, ¶ 10, ¶14, ¶16; ECF No. 87-1 at 2, ¶ 3. However, the parties do not agree on whether the step, with no warning, constituted a dangerous condition or whether a fall like the one Mrs. Cabrera suffered was foreseeable without warning.

With respect to claims based upon premises liability, the Puerto Rico Supreme Court has concluded that "the owner or operator of a commercial establishment has a duty to exercise reasonable care to maintain those areas that are accessible to the public, so as to avoid injury to its patrons." *Cline v. Puerto Rico Ports Auth.*, 620 F.Supp.2d 233, 237 (D.P.R. 2008) (citing *Hernández–López,* 117 D.P.R. at 104). To prove that a business owner breached that duty, a plaintiff must show that the defendant had actual or constructive knowledge of a hazardous or dangerous condition on his premises that more likely than not caused the damages to the plaintiff. *Vázquez–Filippetti,* 504 F.3d at 50. Defendants argue that Mrs. Cabrera's accident was not foreseeable and they had no actual or constructive knowledge of the danger of the step because there have been no similar accidents in the

past. ECF No. 72 at 19; ECF 71 at 4, ¶¶ 23-24; ECF 87-1 at 2, ¶ 4; ECF 71-2. Defendants contend that this lack of evidence as to prior accidents is "probative of lack of notice, knowledge, and causation." ECF No. 91 at 6. While this evidence is probative of a lack of actual knowledge, it is not dispositive. *See Woods-Leber v. Hyatt Hotels of P.R., Inc.*, 951 F. Supp. 1028, 1039 (1st Cir. 1997) (finding that the primary method of proof of foreseeability is prior similar incidents but that "some other sort of evidence tending to show that the incident was foreseeable" would also have been acceptable). Defendants also point to evidence that Mr. Cabrera and the other family members present at the dinner on September 19, 2021, entered and exited the booth without any problem, as well as evidence that Mrs. Cabrera admitted that she was aware of the step when she entered the booth. ECF No. 72 at 19; ECF No. 91 at 7.  As previously discussed, Plaintiffs credit her fall to the failure to warn, among other things. ECF No. 31 at 3; ECF No. 87-2; ECF 71-1 at 53-60. Moreover, Mrs. Cabrera's acknowledgment of the step on the way into the booth does not preclude breach, as a reasonable jury could find that a warning as to the step would help a customer not only on their way in, but also on their way out of the booth.

In *Casa de España de Puerto Rico*, 59 F.Supp.3d at 416, the court found that a jury reasonably could, upon weighing the evidence and making credibility determinations, decide in favor of either party whether *Casa de España* exercised reasonable care in warning its guests of the risk of danger of the step. *Id*. (citing *Marshall,* 828 F.2d at 849 (noting questions of fact are properly jury questions)). In *Casa de España* a warning sign had been placed, albeit facing the opposite direction, and may have placed a warning strip on the step, leading to the reasonable inference that it was foreseeable that someone could trip on the step. *Id*. Here, there is evidence that Mrs. Cabrera tripped on her way out with a leg of the table (not the step), not on her way into the booth, and it is undisputed that no warning tape (or any other type of warning) was used. However, the Court does not weigh the

evidence and a determination of whether it was reasonably foreseeable to Defendants, at the time and place in question, that someone could get hurt by losing their balance while exiting an elevated booth without warning as to the step, is a question for the jury and not the court on summary judgment. *Marshall*, 828 F.2d at 849 ("Not only ordinary fact questions, but also evaluative applications of legal standards (such as the concept of legal foreseeability) to the facts are properly jury questions. In any case where there might be reasonable difference of opinion as to evaluative determinations ... the question is one for the jury.") (citing *Jiménez v. Pelegrina,* 112 P.R. Dec. 881, 885 (1982); *Pabon Escabí v. Axtmayer,* 90 D.P.R. 20, 25 (1964)). "In negligence cases, determinations of foreseeability and of whether a defendant acted reasonably fall within the province of the jury. Hence, a court should be cautious in using the summary judgment device to dispose of such cases." *Chapman,* 803 F.Supp. at 573 (citing *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 450 n. 12 (1976)).

The question of whether a warning was necessary and whether Plaintiff would not have fallen had a warning been given should be left to a jury if a plaintiff produces evidence which depicts or describes the condition, and a jury could reasonably find that the condition was dangerous. Jurors can take into account Mrs. Cabrera's account of the fall, among other evidence.[13] ECF Nos. 87-2, 87-4, 87-5, 87-7, 87-8. For the reasons previously stated, Plaintiffs will not be able to introduce evidence

---

[13] Defendants argue the photographic evidence Plaintiffs rely on are "unauthenticated photographs which are inadmissible at summary judgment." ECF No. 91-1. When faced with a motion for summary judgment, the Court may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any." Fed.R.Civ.P. 56(c). In litigating a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). "[H]earsay evidence [may be] submitted in an inadmissible form at the summary judgment stage where the content of the evidence proffered could later be provided in an admissible form at trial." *See Sec. & Exch. Comm'n v. Ramirez*, 2018 WL 2021464, at *7 (D.P.R. Apr. 30, 2018); *De Jesús v. Andrés Reyes Burgos, Inc.*, 2022 WL 525283, at *3, n. 4 (D.P.R. Feb. 22, 2022) ("the authenticated document, unsworn under the penalty of perjury, may be considered on summary judgment."). Specifically, "[b]ecause experts could appear at trial and testify to opinions, which then would not be hearsay, an expert report submitted for purposes of summary judgment could meet the requirements of Rule 56(c)." *Chase* v. *Corning, Inc.*, 2014 WL 5511117, at *2 (D.N.H. Oct. 30, 2014).

of deviation from the original design for the purpose of establishing that tripod based tables cannot be used in booths or that platforms must be at least four or six inches tall. However, Plaintiffs will be allowed to introduce at trial the fact that there was an angler on the edge of the platform in the original design, not to show that an angler was required by law or any standard, but to show that it was foreseeable to Romano's Macaroni Grill that there was a need to have a warning of some kind to patrons getting in and out of the booth due to the change of elevation on the floor. Mrs. Cabrera will also be able to testify about the specifics of how she fell. In other words, Mrs. Cabrera will not be precluded from sharing her version as to how her right foot got tangled, the lighting of the restaurant, the tightness of the space in the booth, and the step without warning, visual or otherwise, that contributed to her fall by making her lose her balance. This is enough evidence for a jury to review and decide for themselves whether the failure to warn constituted negligence on the part of Romano's Macaroni Grill.

Given the evidence of record, whether or not the step without warning constituted a dangerous condition that was reasonably foreseeable to Defendants is a genuine dispute of fact that a reasonable jury could decide either way. Thus, weighing and interpreting the evidence are appropriately left to the trier of fact.

## V.    CONCLUSION

In view, *inter alia*, that Eng. González is unable to testify about any standards applicable to the duty of care, then there is no reason as to why he should be allowed to testify at trial. Thus, Defendants' motion *in limine* to strike Eng. González's testimony (ECF No. 86) is GRANTED. With respect to the pending motion for summary judgment, all claims of failure to follow the original design and of *de facto* implementation of a negligent design (e.g., post square table base had to be used in the booth, platforms for booths must rise to a particular height, ANSI and OSHA standards were not

followed, angler was the only reasonable safety measure, failure to submit changes to the Caguas Municipal Government Permits Office) are DISMISSED. However, the request to disallow Plaintiffs' failure to warn claim is denied. Accordingly, Defendants' motion for summary judgment (ECF No. 72) is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of November, 2024.

s/Marcos E. López
U.S. Magistrate Judge